PENDLETON, President,
delivered the resolution of the court as follows :
The doubt raised was whether the royal assent, to the act of 1769, relative to motions upon forthcoming bonds, was ever obtained, as the act was suspended, until that was procured ?
The ordinary evidence in such cases is the council books of the time, and the govern-our’s proclamation, published in the Virginia Gazette ; but the derangement of the council books during the revolutionary war, and the perishable nature of newspapers, have deprived us of that kind of testimony ; and therefore the court proceeded, under the act of 1787, to supply the defect of evidence, by making such enquiries *as might lead to some satisfactory result. The fruit of which is 'as follows :
1. Mr. Brown the clerk informs us, that application was once made to him as clerk under the stray law ; and that he applied, to Mr. Carrington, respecting it; who told him, that he had read the governour’s proclamation announcing the royal assent; which he himself afterwards saw in the newspaper, and noted in his book, that the stray law was assented to. That, being a law of the same period, and thus authenticated, is, of itself, a strong circumstance to prove, that the law concerning executions was also assented to, as nothing appears to the contrary.
2. The act concerning executions has been uniformly acted under, from that time, to this; which is most conclusive evidence, that the royal assent to it had been obtained, in the sense of the legislature expressed in the act of 1787, which declares that “every such question shall be discussed upon such evidence and circumstances as may be produced by the parties, without requiring either party to shew the official assent to such act, or a certificate from the council books, that such assent was registered therein For the long practice, commencing at a very early period after the passage of the act, and continued, afterwards, without interruption, is a circumstance, entirely, convincing, that the king’s approbation had been procured.
3. The legislature, itself, seems to have acted under the same impression. For the act of 1787, omits forthcoming bonds altogether, and only repeals the laws relative to replevy bonds of three months ; substituting, in their stead, the twelve months replevy bonds ; and repealing, so much of all acts as came within the purview of that, leaving the forthcoming bond, untouched, although that had, as before observed, been acted on, from 1770 to that period : and it is impossible that such an inveterate practice could have escaped the observation of the assembly, which proves that they meant it should continue, and they considered that the king’s approbation had, in fact, been obtained ; but that *the official evidence of it was lost: and it was, to supply the lost evidence that the act of 1787 was made.
4. But the act of 1788 still further elucidates that impression ; and removes all doubt with regard to the legislative opinion of the validity of the act of 1769 ; for it declares, in words, that “ Bonds may still be given for the forthcoming of goods or other property at the day of sale ; but if the condition of such bond is not complied with, and judgment shall be entered thereupon, the obligors shall be deprived of the benefit of this and the above recited act.” 12 Hen. Stat. 777. Which was intended as a commination, to produce compliance ; but there would have been very little terror in it, if it related to the act of 1748, as that was nothing more than a common obligation to the sheriff, upon which a suit only, and not a motion, could be maintained : an evil which the act of 1769 professed to remedy ; and there is nothing to shew that either the legislative will, or the sentiment of the country, had changed, upon the subject.
All these circumstances combined, lead to *827 absolute conviction, that the royal assent was, in fact, obtained. But, if those circumstances had not been so conclusive, the court would have presumed, that it had been proved in the district court.
The judgment is therefore áffirmed.
See 5 Hen. Stat. 559, for the form of the instrument declaring the royal assent to an act of assembly, with a suspending clause to it.
And see the same book, page 566, for the form of the governour’s proclamation repealing an act of assembly, which had no suspending clause to it.